700 Bklyn Realty LLC v Lynch (2025 NY Slip Op 51251(U))

[*1]

700 Bklyn Realty LLC v Lynch

2025 NY Slip Op 51251(U)

Decided on August 8, 2025

Civil Court Of The City Of New York, Kings County

Cohen, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on August 8, 2025
Civil Court of the City of New York, Kings County

700 Bklyn Realty LLC, 700 Bklyn 12 realty LLC, Oceanwalk Beach Bklyn Realty LLC, Oceanwalk Condo Bklyn Realty LLC, 780 Bkyln Realty LLC, Minnetoka III Bklyn Realty, LLC, as tenants-in-common, Petitioner,

against
Forbes Lynch 700 Ocean Avenue Apartment 6J Brooklyn, New York 11226, Respondent, Audrey Ellen Kerrigan Emmani Lynch Chantel Lynch "John Doe" "Jane Doe" Respondent(s)-Undertenants.

Index No. LT59845/18

Hannah Cohen, J.

Petitioner commenced a holdover proceeding against the respondent and undertenants alleging that Forbes Lynch, the tenant of record had moved to another residence and no longer resided at the premises as his primary residence and or respondent has sublet the premises to other individuals. The case commenced in March 2018. Respondents appeared with counsel who filed a notice of appearance indicating he represented respondents and filed a demand for [*2]bill of particulars and filed an answer. Petitioner responded to the bill of particulars and respondents filed a motion for augmentation of the bill of particulars. Petitioner then filed an amended bill of particulars. Respondent subsequently filed a motion to strike petitioner's pleadings and to dismiss the proceedings. By decision and order dated April 1, 2019 the court denied respondent's motion to dismiss and or strike and found the amended bill of particulars responses to be sufficient and adjourned the case for trial to April 30, 2019. Petitioner then filed a motion for discovery and for respondents to appear for a deposition. Per order dated July 10, 2019 the court noting that respondents counsel no longer was appearing on the case although never formally relieved as counsel, granted the motion on default and marked the case off calendar pending discovery. Petitioner then filed a motion for judgment in petitioner's favor or for an order precluding any evidence not provided in discovery from being entered in the trial. On January 23, 2020 again on default, the court granted petitioner's motion as to preclusion and adjourned the case to February 13, 2020 for trial. In March 2020 petitioner sought to reargue that part of the decision which did not grant a judgment of possession in petitioner's favor in the courts prior order dated January 23, 2020. The court then closed due to the Covid-19 health pandemic. The court by decision and order dated February 1, 2022 denied petitioner's motion to reargue and adjourned the case for trial, also noting no appearance by respondents or their counsel. The parties had previously per a two attorney stipulation agreed to pay ongoing use and occupancy during the pendency of the trial. A trial was mistakenly never scheduled by the Court and subsequently respondent filed for ERAP on August 23, 2022 which stayed the proceedings. Petitioner then sought by motion to vacate the ERAP stay arguing that as the case is holdover proceeding and that per correspondence with OTDA respondent had failed to submit any documentation to support his application, and as such the ERAP stay should be lifted. Respondent failed to oppose the motion or appear and the court by decision and order dated August 1, 2023 granted vacating the ERAP stay, noting that the ERAP application had timed out for failure to provide supporting documentation. The court then adjourned the case for trial. Respondents failed to appear and an inquest was held wherein petitioner was awarded a final judgment of possession. On December 19, 2023 Emmani Lynch, brought a post evict order to show cause to relieve his attorney stating his attorney has informed him that he will no longer be representing him and seeking restoration to the premises as he has been living there for five years and has succession rights. By decision and order dated 12/19/2023 the court denied restoration by Emmani Lynch, who was not the tenant of record, noting that respondent Forbes Lynch had failed to provide discovery in five years or appear for a deposition, and notes the preliminary injunction order issued against Emmani Lynch in Supreme Court in 2022. Petitioner now seeks by motion legal fees against the tenant of record, Forbes Lynch ,as the prevailing party in the amount of $62,519.50 and seeks use and occupancy and fees for $64,421.96 through December 2023. Petitioner submits petitioner's original lease, renewal leases, MCI orders, rent ledger which includes marshal and moving fees, and a ledger of itemized legal fees. The motion was unopposed and no one appeared on the return date of the motion.
Courts have held that the prevailing party may seek legal fees pursuant to an agreement, lease or proprietary agreement and RPL 234. In the instant case, the court found that petitioner proved its prima facie case and his failure to reside at the premises as his primary residence [*3]constituted a breach of the lease necessitating the institution of legal proceedings and the incurring of expenses thereby which the landlord is entitled to recover under the terms of Paragraph 20 (5) and (7) of the lease. Courts have held that provisions, similar to the one here at issue, which allow for the recovery of attorneys' fees by a landlord who prevails in a summary proceeding brought because of a tenant's breach of the lease, have long been held to be valid and enforceable. (See, e.g., 379 Madison Ave., Inc. v. Stuyvesant Co., 242 App.Div. 567, 275 N.Y.S. 953, affd. 268 NY 576, 198 N.E. 412; N.V. Madison Inc. v. Saurwein, 103 Misc 2d 996, 431 N.Y.S.2d 251.) The right to seek legal fees in the context of this "primary residence" summary proceeding is not only legally mandated but also has significant positive policy ramifications consistent with the purpose and goals of the various regulations enacted with respect to rent stabilized apartments. The New York City Rent Stabilization Law, which was initially adopted in 1969 to regulate housing completed between February 1, 1947 and March 10, 1969, was a response to the crisis which then existed and continues to exist, in the shortage of affordable residential rental facilities in New York City. The law sought to address that crisis by putting a brake on runaway rent increases while at the same time providing some leeway to landlords in order to encourage the future construction of new housing accommodations. To accomplish this dual purpose the Rent Stabilization Law was intentionally designed to be a less onerous form of regulation than the Rent Control Law, and one of the basic and most significant components of the Stabilization Law is its application only to premises used as the primary residence of the tenant. (See, 8200 Realty Corp. v. Lindsay, 27 NY2d 124, 313 N.Y.S.2d 733, 261 N.E.2d 647; Sullivan v. Brevard Assoc., 66 NY2d 489, 498 N.Y.S.2d 96, 488 N.E.2d 1208.)A tenant of a stabilized apartment who maintains a primary residence elsewhere, and also seeks to retain the stabilized apartment for convenience or for considerations of personal gain, is not one who is a victim of the housing crisis but may rather be said to be a contributing and exacerbating factor in the continuation of the critical shortage of affordable apartments. The aims of the Rent Stabilization Law are better served when such occupancy is discouraged by way of allowing a successful landlord to recover, when authorized by the terms of the lease, the legal fees and expenses necessarily incurred in bringing proceedings to establish the tenant's non-primary use. See Cier Indus. Co. v. Hessen, 136 AD2d 145, 149—50, 526 N.Y.S.2d 77, 80—81 (1988).
Before ordering one party to pay another party's attorneys' fees, the court always has the authority and responsibility to determine that the claim for fees is reasonable. Underlying this responsibility is "the traditional authority of the courts to supervise the charging of fees for legal services under the courts' inherent and statutory power to regulate the practice of law" (Matter of First Natl. Bank of E. Islip v. Brower, 42 NY2d 471, 474, 398 N.Y.S.2d 875, 368 N.E.2d 1240 [1977] ). As a general matter, case law establishes that where a landlord has a right to recover attorneys' fees pursuant to a lease provision, the recoverable fees are those that are reasonable (see e.g. Livigne v. D'Agostino Supermarkets, 207 AD2d 776, 616 N.Y.S.2d 515 [1994]; Barrios v. Klein, 133 AD2d 574, 519 N.Y.S.2d 818 [1987], lv. dismissed 70 NY2d 1002, 526 N.Y.S.2d 438, 521 N.E.2d 445 [1988]; Kumble v. Windsor Plaza Co., 128 AD2d 425, 512 N.Y.S.2d 811 [1987], lv. dismissed 70 NY2d 693, 518 N.Y.S.2d 1029, 512 N.E.2d 555 [1987] ). Moreover, inasmuch as a tenant's reciprocal entitlement to attorneys' fees under Real Property Law § 234 specifically authorizes recovery of "reasonable" attorneys' fees (see Cier Indus. Co. v. Hessen, [*4]136 AD2d 145, 526 N.Y.S.2d 77 [1988] ), the attorneys' fees to which a landlord is entitled under a lease must be similarly restricted. See Solow Mgmt. Corp. v. Tanger, 19 AD3d 225, 226, 797 N.Y.S.2d 456, 457 (2005).
Here, petitioner engaged in a protracted and lengthy litigation for five years, while failing to appear himself or by his counsel the last two years. Respondents between 2018 when the case commenced and 2023 when petitioner was awarded a final judgment of possession failed to provide any discovery and were precluded from providing any evidence not provided for in discovery and ultimately failed to appear for trial. Petitioner is the prevailing party and as such the lease permits an award of legal fees. The court notes that petitioner's attorney agreed to service via NYSCEF in 2021, yet failed to appear in court late 2022 onwards. A review of the court physical file and NYSCEF fails to indicate that petitioner's attorney withdrew as petitioner's attorney on the record. Courts have held that to determine reasonable hourly rate, the court can consider the nature of the services rendered, complexity and novelty of the issues, attorney's professional reputation and experience, level of skill involved handling the case, the results obtained and the going rate in the community for services performed by attorneys of comparable skills (See Ross v Congregation B'Nai Abraham Mordechai, 12 Misc 3d 559 [NY Civil 2006]). Courts may also look to the amount of time properly devoted to the case. (See 1050 Tenants Corp. v Lapidus, NYLJ 10/19/1999 at 26, page 1). Court must deny or reduce compensation for services that are not described specifically enough to permit determination as to whether they were excessive (See Meason v Greenwich & Perry St. Housing Corp., NYLJ 4/30/02 at 18, page 6).
As such service via NYSCEF of the herein motion for use and occupancy and legal fees was proper and upon default the court orders the following:
The court in reviewing the itemized bills notes that the amount billed for, are fair, accurate and reasonably relate to the tasks performed. After calculating the amount of time spent, the expertise involved, the results achieved and the reasonable expenditure for work performed in this case, the Court does note that some of the fees for retrieving files, or reviewing court notifications, and reviewing court documents were excessive and hereby the court awards the petitioner $54.780 in legal fees.
Petitioner is also awarded a non possessory money judgment against the respondent Forbes Lynch for use and occupancy owed through December 2023 in the amount of $65,298.97 (use and occupancy of $60,319.25, marshal fees $279.72 and Liffey moving costs for $4,700).
This constitutes the decision and order of the court.
Petitioner to serve a notice of entry upon respondent's counsel by first class mail with certificate of mailing and upon NYSCEF .
Dated: August 8, 2025
Brooklyn, New York
HANNAH COHEN, J.H.C.